UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAWN CHAPPEL,
    Plaintiff,

vs.

ADAMS COUNTY CHILDREN'S
SERVICES, et al.,
    Defendants.

Case No. 1:22-cv-747
Dlott, J.
Litkovitz, M.J.

SUPPLEMENTAL REPORT AND
RECOMMENDATION

Plaintiff, a resident of Winchester, Ohio, filed a pro se civil rights complaint against Adams County Children's Services and caseworker Ashlee Moore. (Doc. 1). By separate Order, plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. On December 29, 2022, the Court issued a Report and Recommendation that this complaint be dismissed in its entirety pursuant to the Prison Litigation Reform Act of 1995 § 80428 U.S.C. § 1915(e)(2)(B) on the basis of the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and plaintiff's failure to state a claim for which relief could be granted. (Doc. 7). Plaintiff's objection to that Report and Recommendation is pending before District Judge Dlott. (Doc. 9). This matter is now before the Court on plaintiff's subsequent motion for leave to amend her complaint. (Doc. 10).

**I. Plaintiff's proposed amended complaint and attachments thereto**

As summarized in the Court's prior Report and Recommendation, plaintiff's original complaint against Adams County Children's Services caseworker Ashlee Moore alleged violations of her Fourth and Fourteenth Amendment rights in October and November of 2022 in connection with the search of her home and removal of her two minor children on November 14, 2022. (Doc. 7 at PAGEID 123-24). In plaintiff's proposed amended complaint, she adds as defendants Sonya Meyer, Supervisor of the Adams County Child

Services Agency; Sharon Anderson of the Adams County Housing Authority, plaintiff's landlord; and Donnie Edgington, Chief of the Winchester Police Department. (Doc. 10 at PAGEID 165). Plaintiff also attaches numerous photos, Facebook posts, Google reviews, text messages, emails, and other documents to her proposed amended complaint that she believes support the claims therein. (*See id.* at PAGEID 197-313).[1]

Count one of the proposed amended complaint alleges that defendant Moore obtained a court order to enter plaintiff's home and for protective supervision by "filing a false complaint" and planned this entry with proposed defendants Edgington and Anderson. (Doc. 10-1 at PAGEID 168). Plaintiff appears to allege both substantive and procedural Fourteenth Amendment due process violations as well as a civil rights conspiracy claim under 42 U.S.C. § 1985(3).[2] (*See id.*). Relatedly, count three of the proposed amended complaint again refers to substantive and procedural Fourteenth Amendment due process violations based on

---

[1] Pursuant to Federal Rule of Civil Procedure 10, the exhibits are considered a part of the complaint "for all purposes." *See* Fed. R. Civ. P. 10(c). *Cf. Fishman v. Williams*, No. CV 14-4823, 2016 WL 11484591, at *7 (C.D. Cal. Sept. 21, 2016) ("When screening a *pro se* plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-cv-1484, 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to Johnson's Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision."). However, the Court declines to comb through the record to raise new claims or make legal arguments for plaintiff. *Cf. Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."). In addition, plaintiff's proposed amended complaint references Adams County juvenile court proceedings, and the Court therefore considers related documents attached to plaintiff's original complaint—as this appears consistent with plaintiff's intent. *Mattox v. Edelman*, 851 F.3d 583, 591 n.5 (6th Cir. 2017) (quoting *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). *Cf. U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)) ("[A] court may take judicial notice of another court's opinion, not for the truth of the facts therein, but for the existence of the opinion.").

[2] Plaintiff also references 18 U.S.C. § 242, but there is no private right of action under this statute. *Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) (citing *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)).

2

allegations that defendant Moore "tricked" and "coerc[ed]" plaintiff into executing a "safety plan" when she carried out the Adams County juvenile court's protective supervision order (Doc. 1 at PAGEID 8-10). (*Id.* at PAGEID 171-72).

Count two of the proposed amended complaint alleges that plaintiff's home was unlawfully searched on November 14, 2022 in violation of the Fourth Amendment because defendant Moore obtained the Adams County juvenile court protective supervision order by giving false testimony. (*Id.* at PAGEID 170). Plaintiff also alleges that proposed defendants Edgington and Anderson "assisted [defendant] Moore in the unlawful entry to [her] home" on November 14, 2022—the day of the removal—and that proposed defendant Meyer "approved" all of defendant Moore's actions. (*Id.*; *see also id.* at PAGEID 172 (referencing the participation or approval of the proposed defendants in the alleged unlawful search)).

Count four of the proposed amended complaint alleges a conspiracy to "interfere with [plaintiff's] housing rights" by defendants Moore, Meyer, Anderson, and Edgington. (*Id.* at PAGEID 172). Plaintiff cites § 818 of the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. (*See* Doc. 10-1 at PAGEID 173).[3]

Finally, plaintiff's motion to amend references a First Amendment retaliation claim,

---

[3] Plaintiff also cites 18 U.S.C. §§ 241 and 242 in connection with this claim (*see id.* at PAGEID 172-73), neither of which provide a private right of action. *Booth*, 290 F. App'x at 921 (citing *Oguaju*, 76 F. App'x at 581).

3

though it is not set forth as a discrete count of plaintiff's proposed amended complaint. (*See* Doc. 10 at PAGEID 165). Plaintiff alleges that the Fourth and Fourteenth Amendment violations by defendant Moore and proposed defendants Edgington, Anderson, and Meyer were committed in retaliation for "reviews posted and complaints" that plaintiff had made against them in the past. (*Id.*; *see also* Doc. 10-1 at PAGEID 170 ("The acts committed against our family were done out of retaliation for complaints filed and reviews posted. . . .")).

Plaintiff's proposed amended complaint also narratively describes her history with defendant Moore and proposed defendants Edgington, Anderson, and Meyer (Doc. 10-1 at PAGEID 175-93). Briefly summarized, plaintiff first describes a bad relationship with proposed defendant Edgington (Winchester Police Chief) stemming from her dogs and an offensive comment made by a member of plaintiff's family toward defendant Edgington's wife, which she alleges resulted in harassment of plaintiff and her family. (*Id.* at PAGEID 175-178).[4] Plaintiff next describes issues obtaining public housing after a fire burned down her prior residence, and various issues with her lease once it was ultimately obtained—much of which references proposed defendant Anderson (her landlord). (*Id.* at PAGEID 179-185). Finally, plaintiff describes a long history with defendant Moore, proposed defendant Meyer (defendant Moore's supervisor), and Child Protective Services going back to 2014. (*Id.* at PAGEID 185-193).

---

[4] In this section of the proposed amended complaint (*id.* at PAGEID 178-79), plaintiff makes a passing reference to 42 U.S.C. § 14141, since recodified at 34 U.S.C. § 12601, which makes unlawful the governmental "pattern or practice" of "depriv[ing] persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). There is no private right of action under this statute. *See id.* at § 12601(b) ("*[T]he Attorney General* . . . may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.") (emphasis added); *Logue v. U.S. Marshals*, No. 1:13-cv-348, 2013 WL 3983215, at *3 (S.D. Ohio Aug. 1, 2013) (collecting authority within the Sixth Circuit), *report and recommendation adopted*, 2013 WL 5334494 (S.D. Ohio Sept. 23, 2013).

In the prayer for relief in plaintiff's proposed amended complaint, plaintiff no longer asks the Court to "reverse" Adams County juvenile court orders. (Doc. 1 at PAGEID 7). Instead, she appears to seek injunctive relief related to her First Amendment retaliation claim. (*See* Doc. 10-1 at PAGEID 194). Plaintiff also continues to seek $50,000 in compensatory damages and $100,000 in punitive damages. (*Id.* at PAGEID 195). Finally, plaintiff "asks[s] the court to stop the eviction process until [she] can find a place to rent." (*Id.*).

II. **Legal Standard**

Federal Rule of Civil Procedure 15(a) governs amendments to the pleadings. A complaint may be amended once as a matter of course within twenty-one days or service of responsive pleadings. Fed. R. Civ. P. 15(a)(1)(B). If a plaintiff wishes to amend the complaint after the twenty-one day period has expired, as is the case here, she must obtain consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 472 F.3d 996, 1001 (6th Cir. 2005). The test for futility is whether the amended complaint "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

As relevant to Rule 12(b)(6), a complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S.

97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to withstand a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### III. Analysis

#### A. Jurisdictional issues

In its prior Report and Recommendation, the Court discussed the *Rooker-Feldman* doctrine and determined that it barred plaintiff's claim "[t]o the extent plaintiff [sought] an order from this Court 'reversing' the juvenile court magistrate's order temporarily removing plaintiff's children from her custody. . . ." (Doc. 7 at PAGEID 125-26, referring to Doc. 1 at PAGEID 7).

Plaintiff no longer seeks this relief. To the extent that plaintiff's proposed amended claims concern defendant Moore and the proposed defendants' "conduct *leading up* to the issuance of [an] ex parte order and executing that order[,]" the *Rooker-Feldman* doctrine is not a jurisdictional bar. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 964 (6th Cir. 2021). *See also Alexander v. Rosen*, 804 F.3d 1203, 1206-07 (6th Cir. 2015) (The *Rooker-Feldman* doctrine did not apply where the plaintiff "d[id] not appeal the state court's child support decision; he challenge[d] the conduct of the individuals who happened to participate in that decision.").

Decisions following *Cunningham* have been inconsistent in application. *Compare Scharbrough v. S. Cent. Ohio Job & Fam. Servs.*, No. 2:20-cv-4527, 2021 WL 2314848, at *6-8 (S.D. Ohio June 7, 2021) (claims that the defendants did not investigate the subject child's welfare and did not reconcile known, conflicting information prior to seeking an *ex parte* removal order (i.e., that the *ex parte* order was obtained without probable cause) were not barred under *Rooker-Feldman*), *reconsideration denied*, 2022 WL 615037 (S.D. Ohio Mar. 2, 2022), *with Hall v. Bush*, No. 1:20-cv-731, 2021 WL 4239855, at *6 (W.D. Mich. July 21, 2021) (finding similar claims barred under *Rooker-Feldman* because the alleged injury stemmed directly from the *ex parte* order), *report and recommendation adopted*, 2021 WL 3750164 (W.D. Mich. Aug. 25, 2021). Given that *Rooker-Feldman* "applies only to an exceedingly narrow set of cases[,]" the Court finds *Scharbrough*'s related analysis more persuasive. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 400 (6th Cir. 2020) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)). Because plaintiff's proposed amended complaint no longer directly seeks reversal of Adams County juvenile court orders, the Court concludes

7

that the *Rooker-Feldman* doctrine would not bar this Court's jurisdiction over the claims in the proposed amended complaint.

The abstention doctrine articulated in *Younger v. Harris,* 401 U.S. 37 (1971), however, continues to present a jurisdictional bar to most of plaintiff's claims in her proposed amended complaint. Absent extraordinary circumstances, federal courts may not interfere with pending state proceedings in order to entertain constitutional challenges to the state proceedings. *Id*. Under *Younger*, the federal court must abstain where "[1] state proceedings are pending; [2] the state proceedings involve an important state interest; and [3] the state proceeding will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Kelm v. Hyatt,* 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir. 1989)). *See also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-05 (1975). Extraordinary circumstances barring abstention include "great and immediate" irreparable injury, state law that is "flagrantly and patently violative of express constitutional prohibitions," or "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger,* 401 U.S. at 46, 53, 54. *See Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996).

All three factors supporting *Younger* abstention are present in this case. First, it appears the dependency case is currently pending in the Adams County juvenile court. (Doc. 1 at PAGEID 11-12). *See Huffman*, 420 U.S. at 608; *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003); *Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990). Second, the dependency case implicates the important state interests in child custody and parental rights. *See Meyers v. Franklin Cnty. Ct. Com. Pl.*, 23 F. App'x 201, 204 (6th Cir. 2001) (*Younger* abstention case

8

stating that "cases out of the Supreme Court and this Court make it clear that abstention is generally appropriate in matters of family relations such as child custody"). *See also Younger*, 401 U.S. at 43-45. Third, there is no allegation that the state juvenile court proceedings cannot provide an opportunity for plaintiff to raise any constitutional claims in connection with the dependency proceedings. *See Furr-Barry v. Underwood*, 59 F. App'x 796, 797 (6th Cir. 2003) (affirming the application of *Younger* where a case was pending in a Tennessee juvenile court, because "there was no evidence that the state court proceedings did not provide an opportunity for [the plaintiff] to raise her constitutional claims[ ]"). Therefore, abstention under *Younger* is appropriate.[5]

Nor has plaintiff alleged facts showing the existence of extraordinary circumstances barring the application of *Younger* abstention. While plaintiff alleges difficulties with an unspecified "grievance policy" (Doc. 10-1 at PAGEID 194), this does not explain why plaintiff could not raise her proposed constitutional claims in the Adams County juvenile court. For the reasons stated above, the Court concludes that adherence to the *Younger* abstention doctrine is required in this case as to plaintiff's First, Fourth, and Fourteenth Amendment claims and 42 U.S.C. § 1985 conspiracy claim related to the Adams County juvenile court proceedings.

Plaintiff's only proposed claim that appears unrelated to the Adams County juvenile

---

[5] As noted above, plaintiff's prayer for relief in the proposed amended complaint requests that the Court enjoin a pending state court eviction proceeding—of which this appears to be the only mention aside from an attached Adams Metropolitan Housing Authority "Notice to Leave the Premises." (*See* Doc. 10-1 at PAGEID 195, 312). All three *Younger* factors support abstention as to that requested relief as well. Eviction implicates important state interests, *see Doscher v. Menifee Circuit Court*, No. 03-5229, 2003 WL 22220534 (6th Cir. Sept. 24, 2003), and there is no indication the plaintiff could not raise federal claims in the context of the ongoing eviction proceeding.

court proceedings is the FHA claim that, as discussed below, could not survive a Rule 12(b)(6) motion to dismiss.

### B. Rule 12(b)(6)

Plaintiff's proposed FHA claim fails to state a claim upon which relief can be granted. To state a claim for relief under § 818 of the FHA, 42 U.S.C. § 3617, plaintiff must allege "(1) that [she] exercised or enjoyed a right guaranteed by §§ 3603-3606; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between [her] exercise or enjoyment of a right and the defendant's conduct." *Wells v. Rhodes*, 928 F. Supp. 2d 920, 931 (S.D. Ohio 2013) (quoting *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir. 2004)). Critically, however, a plaintiff must allege facts showing defendants acted with a "discriminatory animus." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). *See also Cooper v. W. & S. Fin. Grp., Inc.*, 847 F. Supp. 2d 1031, 1037 (S.D. Ohio 2012) (to state a claim for interference under § 3617, "plaintiffs must allege facts to show defendant falls within the scope of the statute, which applies to 'actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus'") (citing *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003)) (citing *Mich. Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Plaintiff alleges no discriminatory animus to support any underlying FHA claim. Moreover, plaintiff cites a criminal statute as the basis for a related conspiracy claim, for which there is no private right of action. *See supra* note 3. In any event, "it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory

allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)). Aside from citing a criminal conspiracy statute, the most that plaintiff appears to allege regarding an FHA conspiracy is that proposed defendants' Edgington and Anderson "both tried to interfere with [her] housing rights" and that the former gave the latter information regarding plaintiff. (Doc. 10-1 at PAGEID 172, 178, and 180). These vague and conclusory allegations do not specifically plead a conspiracy. *Id.* at 400. Plaintiff's proposed claims related to the FHA would not survive a Rule 12(b)(6) motion.

Plaintiff likewise fails to state a cognizable civil rights conspiracy claim in her proposed amended complaint. Section 1985 provides a cause of action for conspiracy to deprive an individual the equal protection of the law. *See* 42 U.S.C. § 1985(3). To state a § 1985(3) claim, plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood. of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). A § 1985(3) claim must also allege racial or class-based invidiously discriminatory animus driving the conspiracy. *See Scott*, 463 U.S. at 834 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Moreover, "conspiracy . . . must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832

11

(6th Cir. 2007) (quoting *Gutierrez*, 826 F.2d at 1538-39).

Plaintiff alleges that defendant Moore "planned with [proposed defendants Edgington and Anderson]" to enter her home in connection with the removal of her minor children. (Doc. 10-1 at PAGEID 168). Plaintiff fails to describe any substance of the alleged agreement between defendant Moore and the proposed defendants or any factual context—such as where or when the alleged agreement was reached. Without any such factual content, the Court cannot reasonably conclude that plaintiff states a plausible claim of conspiracy against defendants. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Moreover, plaintiff has made no allegation that the alleged conspiratorial actions in the proposed amended complaint were in any way motivated by racial or class-based animus or an intent to deprive plaintiff of the equal protection of the laws. *See Scott*, 463 U.S. at 834 (citing *Griffin*, 403 U.S. at 102). Therefore, plaintiff's civil rights conspiracy claim under § 1985(3) would not withstand a Rule 12(b)(6) motion.

Turning to plaintiff's proposed constitutional claims, the Court begins with proposed defendant Meyer: defendant Moore's supervisor. There is no plausible basis in the proposed amended complaint for liability against proposed defendant Meyer in her individual or official capacity. Plaintiff alleges only that proposed defendant Meyer "approved" defendant Moore's actions but does not cite any specific conduct by defendant Meyer. (*See* Doc. 10-1 at PAGEID 170, 172). "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the [official]'s involvement to the constitutional infirmity. . . ." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016). Plaintiff fails to meet that burden in her proposed amended complaint.

Plaintiff's proposed amended complaint does not otherwise identify a specific Adams

12

County or Adams County Child Services policy or practice that would serve as the basis for proposed defendant Meyer's liability in her official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (An entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ."). Plaintiff does not identify a policy or custom of Adams County or its Child Services Agency that allegedly resulted in constitutional injury. Accordingly, to the extent plaintiff's proposed amended complaint alleges claims against Sonya Meyer, it would not withstand a Rule 12(b)(6) motion.

Turning to the Fourteenth Amendment, plaintiff's due process claims against defendant Moore[6] appear to contain both substantive and procedural components. Plaintiff's proposed amended complaint fails to state a substantive due process claim against defendant Moore based on her alleged deprivation of plaintiff's parental rights. In a case directly on point, the plaintiff (a parent) filed suit against a county child services case worker after losing custody of her children, and the Sixth Circuit held:

> [C]ounty caseworkers cannot be held liable for a juvenile court's decision to deprive a parent of custody "[b]ecause Ohio law refers custody decisions to the juvenile court, which has independent authority to conduct hearings and collect evidence." *Teets v. Cuyahoga Cty.*, 460 F. App'x 498, 502 (6th Cir. 2012) (citing *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011)). "[E]ven intentional misrepresentations by a social worker during an investigation leading up to Ohio custody proceedings do not violate the parent's substantive due process rights because *the social worker has no independent ability to institute the alleged deprivation*." *Id.* Thus, when "the [plaintiff] seek[s] to hold [county caseworkers] accountable for subsequent

---

[6] Plaintiff does not allege that proposed defendants Edgington or Anderson were involved with the deprivation of plaintiff's parental rights—only that they assisted with an unlawful search. (Doc. 10-1 at PAGEID 170 (Proposed defendants Edgington and Anderson "assisted [defendant] Moore in the unlawful entry to our home.")).

13

criminal or juvenile court actions, that argument also fails." *Id.* *Arsan v. Keller*, 784 F. App'x 900, 910 (6th Cir. 2019) (emphasis added).

In the instant case, defendant Moore had "no independent ability" to grant Adams County Children's Services temporary custody of plaintiff's minor children. *Id.* Rather, that decision rested with the Adams County juvenile court. Plaintiff's Fourteenth Amendment substantive due process claim would not survive a Rule 12(b)(6) motion to dismiss.

Plaintiff also alleges a procedural due process claim against defendant Moore. Plaintiff alleges that the Adams County juvenile court proceedings resulting in the deprivation of her parental rights were unfair because defendant Moore obtained the protective supervision order authorizing entry into her home under false pretenses and tricked and coerced her into executing a safety plan. (Doc. 10-1 at PAGEID 170-71). In *Arsan*, the Sixth Circuit held:

> When an aggrieved parent sues county caseworkers for their conduct during child custody proceedings culminating in the deprivation of custody by the juvenile court, however, responsibility for procedural deficiencies lies with the juvenile court, not the caseworkers. *Pittman*, 640 F.3d at 730. *When caseworkers give testimony or otherwise participate as legal advocates in custody hearings, quasi-prosecutorial immunity shields them from liability. Id.* at 724. This immunity, which is absolute and applies in the same way as prosecutorial immunity, shields caseworkers from damages even when they knowingly make false or defamatory statements, *id.* at 725, or when their conduct is "unquestionably illegal or improper," [*Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)]. All that matters is that the alleged illegal conduct stems from the caseworker's "capacity as a legal advocate," such as testifying in juvenile court. *Pittman*, 640 F.3d at 724.

*Id.* at 911 (emphasis added).

To the extent that plaintiff's proposed amended procedural due process claim involves how defendant Moore secured the Adams County juvenile court order authorizing the search of plaintiff's home, it unquestionably involves defendant Moore's "capacity as a legal advocate."

14

*Id.* (quoting *Pittman*, 640 F.3d at 724). Plaintiff alleges that defendant Moore filed a false complaint and gave false testimony to the juvenile court for the purpose of obtaining protective custody over her children. Defendant Moore would be shielded by quasi-prosecutorial immunity from plaintiff's Fourteenth Amendment procedural due process claim.

To the extent plaintiff's proposed amended procedural due process claim relates to defendant Moore's alleged execution of a safety plan, it still fails. "[W]hen a parent voluntarily consents to a safety plan, 'no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent.'" *Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008) (adopting the reasoning of and quoting *Dupuy v. Samuels*, 465 F.3d 671-62 (7th Cir. 2006)). Even if plaintiff's statements that she felt coerced to execute the safety plan are taken as true, this does not render it involuntary. *Teets*, 460 F. App'x at 503 (citing *Smith*, 520 F.3d at 600) (an agency's threat of removal to force the execution of a safety plan "does not undermine the voluntary nature of a safety plan").[7] Plaintiff's proposed procedural due process claim based on her execution of a safety plan would not withstand a Rule 12(b)(6) motion.

Plaintiff's proposed Fourth Amendment unlawful search claim likewise would not withstand a Rule 12(b)(6) motion against defendant Moore or any proposed defendant. The Fourth Amendment protects against warrantless searches of a home, including those performed

---

[7] In *Schulkers v. Kammer*, the Sixth Circuit distinguished a situation in which the plaintiff parents alleged that children's services officials made specific misrepresentations regarding the safety plan and its ramifications, and the plaintiff parents had repeatedly asked to be released from the safety plan's terms after executing it. 955 F.3d 520, 543 (6th Cir. 2020). Under those circumstances, the court concluded on summary judgment that a triable issue remained on the plaintiff's procedural due process claim. *Id.* Here, in addition to the fact that defendant Moore had a protective supervision order in hand when she asked plaintiff to execute the safety plan (*see* Doc. 1 at PAGEID 8-10), plaintiff's allegations regarding coercion are conclusory. (*See* Doc. 10-1 at PAGEID 171-72, 189-90).

15

by social workers. *See Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 859 (6th Cir. 2012). "The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006) (citing *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000); *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806-07 (W.D. Mich. 2004)). In this case, by plaintiff's own admission and attachments to her original complaint, the search of her home and seizure of her children were done pursuant to an Adams County juvenile court order. (*See* Doc. 1 at PAGEID 8-10).

Plaintiff also alleges that defendant Moore procured this court order by "filing a false complaint" and giving false testimony. (*See* Doc. 10-1 at PAGEID 168, 170). Accepting the truth of these allegations, defendant Moore is nevertheless entitled to immunity. "[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." *Pittman*, 640 F.3d at 724-25 (6th Cir. 2011) (quoting *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989)). That immunity applies regardless of "intentional misrepresentations to the juvenile court in the complaint and affidavits" or inadequate investigation "intimately related" to the custody determination. *Id.* at 726 (quoting *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 423 (6th Cir. 2001)).

Finally, plaintiff's First Amendment retaliation claim would not withstand a Rule 12(b)(6) motion, which requires showings that:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken

16

> against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a casual connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff appears to allege that the removal proceedings at issue were retaliation for her criticisms of the Winchester Police Department and Adams County Child Services. (*See, e.g.*, Doc. 10-1 at PAGEID 211 (Google reviews), 229 (what appears to be a Facebook review), 276 (Google review)). To be sure, the "[f]reedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Lucas v. Monroe Cnty.*, 203 F.3d 964, 973-74 (6th Cir. 2000) (quoting *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)). *See also Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964)). The adverse action here, however, the removal of plaintiff's minor children, occurred pursuant to the Adams County juvenile court's protective supervision order. A "removal order [i]s equivalent to a judicially authorized warrant[,]" *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 696 (6th Cir. 2018); and the Sixth Circuit has held that where there is probable cause for an arrest, a First Amendment retaliation claim fails as a matter of law. *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006).

## IT IS THEREFORE RECOMMENDED THAT:

1. The Court **DENY** plaintiff's motion for leave to amend pleading (Doc. 10).

Date: 3/17/2023

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAWN CHAPPEL,                             Case No. 1:22-cv-747
     Plaintiff,                                 Dlott, J.
     vs.                                       Litkovitz, M.J.

ADAMS COUNTY CHILDREN'S
SERVICES, et al.,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).